## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

AIMÉ LEON DORE HOLDINGS, LLC

    *Plaintiff,*

          v.

JACKETS4RACING,

    *Defendants.*

CASE NO. 26-5796

_____

## PLAINTIFF'S COMPLAINT

Plaintiff Aimé Leon Dore Holdings, LLC ("Aimé Leon Dore" or "ALD" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendant Jackets4Racing and JOHN DOES 1–10 (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1. This is an action for trademark infringement, counterfeiting, false designation of origin, and unfair competition arising from Defendant's unauthorized use of Plaintiff's intellectual property in connection with the manufacture, advertisement, promotion, and sale of counterfeit apparel falsely marketed as products of, or affiliated with, Plaintiff.

2. Plaintiff is a globally recognized fashion and lifestyle brand known for its distinctive trademarks, premium apparel, and high-profile collaborations with leading brands, including Porsche. Plaintiff has expended substantial time, effort, and resources in developing, promoting, and protecting its intellectual property, including its trademarks, trade dress, and brand identity (collectively, the "ALD Marks").

3. Among Plaintiff's most prominent collaborations is its partnership with Porsche, including a capsule collection released in connection with the Porsche 993 Turbo project (the "ALD x

Porsche Collection"), which includes high-end apparel such as leather jackets bearing distinctive branding and design elements associated with both Plaintiff and Porsche.

4. Defendant operates an online commercial enterprise through its website, https://jackets4racing.com (the "Website"), through which it manufactures, markets, and sells apparel incorporating the intellectual property of third parties.

5. Defendant has knowingly and intentionally sought to exploit the goodwill associated with Plaintiff and its collaboration with Porsche by offering for sale counterfeit products that copy, imitate, and falsely purport to be part of the ALD x Porsche Collection (the "Infringing Products").

6. In particular, Defendant has advertised, offered for sale, and sold leather jackets marketed using Plaintiff's name and marks, including products represented as "Porsche x Aimé Leon Dore" apparel, which are not genuine and are not authorized by Plaintiff.

7. On information and belief, Defendant's infringing products are designed to mimic the appearance, branding, and overall commercial impression of Plaintiff's authentic collaboration products, and are marketed in a manner calculated to deceive consumers into believing they are genuine ALD products.

8. Defendant's conduct is part of a broader pattern and practice of selling racing-style jackets incorporating the intellectual property of well-known brands, demonstrating a systematic scheme to trade on the goodwill of others for commercial gain.

9. Defendant's unauthorized use of the ALD Marks in connection with the sale of counterfeit goods is likely to cause confusion, mistake, and deception among consumers as to the source, origin, sponsorship, or affiliation of Defendant's products with Plaintiff.

10. Defendant's acts are willful, deliberate, and undertaken in bad faith, and unless enjoined by this Court, Defendant will continue to cause irreparable harm to Plaintiff's brand, reputation, and goodwill.

11. Defendant's conduct also constitutes the unlawful importation, distribution, and trafficking of counterfeit goods in violation of 15 U.S.C. § 1124, and related provisions of the Lanham Act, and is part of a coordinated scheme designed to evade detection through the use of false identities, offshore sourcing, and third-party intermediaries.

## **PARTIES**

12. Plaintiff Aimé Leon Dore Holdings, LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

13. Plaintiff is engaged in the design, manufacture, marketing, and sale of high-quality apparel, footwear, and related goods, and owns valuable intellectual property rights, including the ALD Marks, which are used in connection with its products and services.

14. Defendant Jackets4Racing is, on information and belief, an individual, group of individuals, and/or business entity of unknown form that operates the Website located at https://jackets4racing.com and engages in the manufacture, marketing, and sale of apparel products to consumers in the United States and internationally.

15. On information and belief, Defendant conducts business under the name "Jackets4Racing" without being registered as a legitimate corporate entity, and has failed to identify any lawful business organization associated with its operations.

16. Defendant has provided inconsistent and unreliable identifying information in connection with its operations. In response to a trademark enforcement action, a representative of Defendant

identified himself as "Sergio Admin," which, upon information and belief, is not a real individual and does not correspond to any known legal person or entity.

17. Defendant further purports to operate from the address 2105 Vista Oeste St NW Suite E 1399, Albuquerque, New Mexico, but on information and belief, no legitimate business entity associated with "Jackets4Racing" operates at that location, and the address is used to conceal Defendant's true identity and place of business.

18. On information and belief, Defendant utilizes third-party service providers, including e-commerce platforms, payment processors, and shipping services, to conduct its business and facilitate the sale and distribution of infringing products to consumers throughout the United States, including within this District.

19. Defendants JOHN DOES 1–10 are individuals, partnerships, corporations, or other entities whose identities are presently unknown to Plaintiff, who have participated in, controlled, directed, assisted, facilitated, or otherwise been involved in the infringing acts alleged herein.

20. On information and belief, the Doe Defendants include individuals and entities responsible for manufacturing, sourcing, payment processing, website operation, and/or fulfillment of the Infringing Products, each of whom knowingly participated in and materially contributed to the infringing conduct alleged herein. Defendant Jackets4Racing and the Doe Defendants operate as a coordinated enterprise with shared control over the Website, product listings, and sale of the Infringing Products.

21. On information and belief, each of the Doe Defendants acted in concert with, and/or as agents, partners, employees, alter egos, co-conspirators, or joint venturers of, Defendant Jackets4Racing, and each is liable for the acts alleged herein.

22. Plaintiff will amend this Complaint to allege the true names and capacities of the Doe Defendants when they are ascertained.

## JURISDICTION AND VENUE

23. This action arises under the trademark laws of the United States, including the Lanham Act, 15 U.S.C. § 1051 et seq., including Sections 32 and 43(a), 15 U.S.C. §§ 1114 and 1125(a).

24. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under federal law and involves claims relating to trademarks and unfair competition.

25. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

26. This Court has personal jurisdiction over Defendants because Defendants, including JOHN DOES 1–10, directly and/or through intermediaries, transact business within the State of Illinois and within this District, and have committed and continue to commit acts of trademark infringement and counterfeiting within this District.

27. Defendants have purposefully directed their infringing activities toward Illinois, including by operating an interactive commercial website accessible in this District, accepting orders from consumers located in this District, processing payments from this District, and shipping infringing products into this District.

28. Defendants operate a fully interactive commercial website through which they advertise, offer for sale, and sell infringing products to consumers nationwide, including consumers located in the Northern District of Illinois.

29. Defendants' Website enables customers to purchase products using payment methods including credit cards, and facilitates shipment of products to consumers throughout the United States, including within this District.

30. On information and belief, Defendants have purposefully directed their infringing activities toward this District by offering products for sale to residents of this District, accepting payment from customers located in this District, and arranging for shipment of products into this District.

31. The exercise of personal jurisdiction over Defendants is proper because Defendants have engaged in continuous and systematic conduct directed at this District and have derived, and continue to derive, revenue from the sale of infringing products in interstate commerce.

32. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to Plaintiff's claims has occurred in this District.

33. Venue is further proper because Defendants' infringing activities have caused harm to Plaintiff within this District, including consumer confusion and damage to Plaintiff's goodwill and reputation.

## FACTUAL ALLEGATIONS

### I.      Plaintiff's Business and Intellectual Property Rights

34. Plaintiff is a leading fashion and lifestyle brand engaged in the design, development, marketing, and sale of high-quality apparel, footwear, and accessories under the AIMÉ LEON DORE name and associated marks (the "ALD Marks").

35. Since its founding, Plaintiff has developed a strong reputation for premium products characterized by distinctive design, high-quality materials, and a unique aesthetic that blends contemporary fashion with classic sportswear influences.

36. Plaintiff's products are sold through its official website, exclusive retail locations, and select authorized partners, and are marketed to consumers throughout the United States and internationally.

37. Plaintiff's products have been widely featured in prominent fashion publications, digital media, and social media platforms, and are recognized by consumers, influencers, and industry participants as premium, high-end goods associated with Plaintiff's brand.

38. Plaintiff owns valuable intellectual property rights in the ALD Marks, including registered trademarks and common law rights arising from extensive and continuous use in commerce in connection with apparel and related goods:

| ALD MARKS | | |
| --- | --- | --- |
| Reg. No. | Trademark | Goods & Services |
| 6392770 | Aimé Leon Dore | Class 25: Clothing, namely, shirts, t-shirts, long-sleeved shirts, polo shirts, rugby shirts, jerseys, dress shirts, jeans, hooded sweat shirts, warm-up suits, snow suits, parkas, cardigans, pants, denim jackets, cargo pants, shorts, boxer shorts, tops as clothing, tank tops, sweat shirts, sweat jackets, sweat shorts, sweat pants, sweaters, vests, fleece vests, pullovers, jackets, coats, blazers, suits, turtlenecks, reversible jackets, shell jackets, sports jackets, heavy coats, over coats, top coats, swimwear, beachwear, visors being headwear, headbands, ear muffs, thermal underwear, long underwear, underclothes, caps being headwear, hats, headwear, scarves, bandanas, belts, neckwear, ties as clothing, robes, gloves, boots, rainwear, socks footwear, shoes, sneakers |

| | | |
|---|---|---|
| 5811889 | AIMÉ LEON DORE | Class 25: Clothing, namely, shirts, t-shirts, long-sleeved shirts, polo shirts, rugby shirts, jerseys, dress shirts, jeans, hooded sweat shirts, warm-up suits, snow suits, parkas, cardigans, pants, denim jackets, cargo pants, shorts, boxer shorts, tops as clothing, tank tops, sweat shirts, sweat jackets, sweat shorts, sweat pants, sweaters, vests, fleece vests, pullovers, jackets, coats, blazers, suits, turtlenecks, reversible jackets, shell jackets, sports jackets, heavy coats, over coats, top coats, swimwear, beachwear, visors being headwear, headbands, ear muffs, thermal underwear, long underwear, underclothes, caps being headwear, hats, headwear, scarves, bandanas, belts, neckwear, ties as clothing, robes, gloves, boots, rainwear, socks footwear, shoes, sneakers |
| 4636813 | AIMÉ LEON DORE | Class 25: Clothing, namely, shirts, t-shirts, long-sleeved shirts, polo shirts, rugby shirts, [ jerseys, dress shirts, jeans, ] hooded sweat shirts, [ warm-up suits, snow suits, ] parkas, [ cardigans, ] pants, denim jackets, [ cargo pants, ] shorts, [ boxer shorts, ] tops, tank tops, sweat shirts, sweat jackets, sweat shorts, sweat pants, sweaters, [ vests, fleece vests, ] pullovers, jackets, coats, blazers, suits, turtlenecks, [ reversible jackets, ] shell jackets, sports jackets, heavy coats, over coats, top coats, swimwear, beachwear, [ visors, ] headbands, [ ear muffs, thermal underwear, long underwear, ] [ underclothes, ] caps, hats, headwear, scarves, bandanas, belts, neckwear, [ ties, ] [ robes, ] [ gloves, ] boots, rainwear, footwear, shoes, sneakers |

| 6746465 | AIMÉ LEON DORE | Class 35: online retail store services featuring clothing, apparel, fashion accessories, and shoes |
|---|---|---|
| 6122847 | AIMÉ LEON DORE | Class 35: Retail store services featuring clothing, apparel, fashion accessories and shoes |
| 7491626 | | Class 25: clothing in the nature of outerwear, namely, gloves, coats, and jackets; clothing, namely, sweatshirts, pullovers, track jackets, shirts, t-shirts, pants, sweatpants, track pants, shorts, footwear, hats, socks; clothing, namely, woven shirts, sneakers, shoes, dress shoes, athletic shoes, sandals, belts, tops as clothing, bottoms as clothing<br><br>Class 18: Bags, namely, coin pouches, mini tote bags, leather zip pouches, leather bags, textile shopping bags; bags, namely, tote bags, shoulder bags, and pouches made of textile |

39. Through Plaintiff's extensive advertising, promotion, and sales, the ALD Marks have become widely recognized by consumers as identifying Plaintiff as the source of high-quality apparel and related goods.

40. The ALD Marks are inherently distinctive and, through extensive use, have acquired substantial secondary meaning in the marketplace. Consumers recognize the ALD Marks as signifying a single source of origin associated with high-end, limited-distribution apparel.

41. Plaintiff's products are sold at premium price points and in limited quantities, reinforcing exclusivity and brand prestige.

42. Plaintiff's collaborations, including with Porsche, are widely publicized and covered in major fashion and lifestyle publications, further enhancing consumer recognition and demand.

43. As a result, the ALD Marks are widely recognized in the marketplace and have achieved substantial commercial strength and consumer recognition.

44. Plaintiff has expended substantial resources in advertising and promoting its products and brand through a variety of channels, including digital marketing, social media platforms, collaborations, and strategic brand partnerships.

45. As a result of these efforts, the ALD Marks have acquired significant goodwill and are associated in the minds of consumers with authenticity, quality, and exclusivity.

46. Plaintiff maintains strict quality control standards for all products bearing the ALD Marks, and genuine ALD products are manufactured, inspected, and distributed under Plaintiff's supervision and control.

47. Plaintiff carefully controls the manner in which its products are designed, produced, marketed, and sold, including limiting distribution channels and maintaining exclusivity over collaborations and branded product releases.

**II.     Plaintiff's Collaboration with Porsche and the ALD x Porsche Collection**

48. Plaintiff has engaged in a series of high-profile collaborations with Porsche, a globally recognized automotive brand, resulting in limited-edition apparel and lifestyle collections that combine Plaintiff's distinctive aesthetic with Porsche's heritage and branding.

49. Among these collaborations is a capsule collection released in connection with the Porsche 993 Turbo project (the "ALD x Porsche Collection"), which includes a curated line of apparel and accessories designed to reflect the design language and legacy of Porsche vehicles.

50. The ALD x Porsche Collection includes premium apparel products, including leather jackets, that incorporate distinctive design elements, branding, and visual features associated with both Plaintiff and Porsche:

**ALD x Porsche Collection**



 

51. Products within the ALD x Porsche Collection are characterized by specific combinations of materials, colorways, logos, and design elements that create a distinctive overall commercial impression recognized by consumers as originating from Plaintiff.

52. The ALD x Porsche Collection was released in a limited and controlled manner, with products made available exclusively through Plaintiff's official channels and select authorized partners, and not through third-party, unauthorized retailers.

53. Authentic products from the ALD x Porsche Collection are sold exclusively through Plaintiff's official channels and select authorized partners at premium price points, and are not available through online retailers such as Defendant.

54. Defendant is not an authorized retailer, distributor, or licensee of Plaintiff and has never been authorized to manufacture, market, or sell products bearing the ALD Marks.

55. Plaintiff exercises strict control over the design, production, marketing, and distribution of products within the ALD x Porsche Collection to ensure quality, authenticity, and consistency with Plaintiff's brand identity.

56. As a result of Plaintiff's efforts, consumers have come to associate apparel bearing the ALD Marks and referencing the ALD x Porsche collaboration with Plaintiff as the sole source of such goods.

57. The ALD x Porsche Collection has received substantial attention in the marketplace and media, further reinforcing the association between Plaintiff's marks and high-quality, limited-edition collaboration products.

58. Because of the exclusivity and controlled distribution of the ALD x Porsche Collection, any products purporting to be part of that collaboration but not sold through Plaintiff's authorized channels are not genuine and are unauthorized.

59. The distinctive branding, naming conventions, and visual presentation associated with the ALD x Porsche Collection make it particularly susceptible to counterfeiting by parties seeking to trade on Plaintiff's goodwill and consumer recognition.

### III. Defendant's Infringing Conduct

60. Defendant operates an online storefront through the Website, https://jackets4racing.com, which is used to advertise, market, and sell apparel products directly to consumers.

61. The Website is a fully interactive e-commerce platform that enables consumers to browse products, place orders, and complete purchases using payment methods including credit cards.

62. The Website represents that it offers shipping to customers internationally, thereby facilitating the sale and distribution of products to consumers throughout the United States and abroad.

63. Defendant operates a commercial enterprise centered on the manufacture, marketing, and sale of apparel that incorporates the intellectual property of well-known brands without authorization.

64. As part of this business model, Defendant systematically offers for sale racing-style jackets and related apparel bearing the trademarks, logos, and branding of multiple recognized brands, including Ferrari, Marlboro, Red Bull, and Plaintiff:

| Examples of Jackets4Racing's Products | |
|---|---|
|  |  |
| https://jackets4racing.com/collections/leather-jackets/products/ferrari-f1-vintage-leather-jacket-red-edition | https://jackets4racing.com/collections/leather-jackets/products/marlboro-racing-leather-jacket |





| https://jackets4racing.com/collections/leather-jackets/products/red-bull-racing-leather-jacket | https://jackets4racing.com/collections/leather-jackets/products/marlboro-vintage-racing-leather-jacket-white-black-edition |

65. Defendant's use of multiple well-known brands in connection with its products demonstrates a deliberate and coordinated scheme to manufacture and distribute counterfeit goods and to trade on the goodwill of established brands for commercial gain. This pattern reflects a systematic counterfeiting operation rather than isolated infringement.

66. Within this scheme, Defendant has advertised, offered for sale, and sold apparel products incorporating Plaintiff's ALD Marks and referencing Plaintiff's collaboration with Porsche.

67. On information and belief, Defendant has offered at least three infringing products that are identical in design, differing only in colorways, all of which incorporate Plaintiff's branding and are marketed as collaboration-style products.

**Infringing Products by Jackets4Racing**



https://jackets4racing.com/collections/leather-jackets/products/porsche-vintage-leather-bomber-jacket-green-edition



https://jackets4racing.com/collections/leather-jackets/products/porsche-vintage-leather-bomber-jacket-black-edition



https://jackets4racing.com/collections/leather-jackets/products/porsche-x-aime-leon-dore-vintage-leather-bomber-jacket-red-edition

68. Defendants have used counterfeit marks that are identical with, or substantially indistinguishable from, Plaintiff's registered marks, including the AIMÉ LEON DORE word mark and associated branding, in connection with the sale, offering for sale, and distribution of goods. The marks used by Defendant are identical to, or substantially indistinguishable from, Plaintiff's registered marks in appearance, placement, and overall commercial impression.

69. These Infringing Products bear Plaintiff's marks directly on the goods themselves, including prominently on the exterior of the jackets, and are presented in a manner that mimics the distinctive branding, layout, and overall commercial impression of Plaintiff's authentic collaboration products.

70. Defendant has used Plaintiff's name and marks in connection with these products, including in product titles, descriptions, and associated marketing materials, to falsely suggest that the products are genuine ALD collaboration goods or are affiliated with, endorsed by, or authorized by Plaintiff:

| **Infringing Product Listing** |
| --- |



71. Defendant's use of Plaintiff's marks in connection with these products is unauthorized and is intended to mislead consumers into believing that the products originate from, are affiliated with, or are endorsed by Plaintiff.

72. Defendant's Website and product listings reflect customer engagement, including reviews and purchase activity, indicating that Defendant's infringing conduct is part of an ongoing commercial operation rather than isolated conduct.

73. On information and belief, Defendant has made numerous sales of the Infringing Products to consumers through its Website, including consumers in the United States.

74. Defendant actively promotes and markets its products through social media platforms, including Instagram, where it maintains an account located at https://www.instagram.com/jackets4racing/ (the "Instagram Account").

75. On information and belief, Defendant's Instagram Account has amassed a substantial following, including approximately 67,000 followers, demonstrating that Defendant is engaged in large-scale commercial promotion of its products.

76. Defendant regularly posts photographs and videos featuring its products, including the Infringing Products, and directs consumers to its Website to purchase such product:



77. Defendant's social media content is designed to attract consumers by showcasing racing-style jackets incorporating well-known brands, including Plaintiff's marks, and by presenting such products as authentic or collaboration-style goods.

78. Defendant's social media posts prominently feature the Infringing Products and include visual depictions of jackets bearing Plaintiff's marks, further reinforcing the false impression that such products are genuine ALD collaboration goods.

79. On information and belief, Defendant's social media activity directly drives consumer purchases of the Infringing Products by directing users to the Website and encouraging immediate transactions.

80. On information and belief, Defendant's social media activity is a primary driver of traffic to its Website and is intended to induce consumers to purchase the Infringing Products.

81. Plaintiff conducted a test purchase of one of Defendant's infringing products, specifically a "Porsche Vintage Leather Bomber Jacket – Green Edition," offered for sale on the Website.

82. Plaintiff purchased the product for $148, along with associated fees and taxes, through Defendant's online checkout system using Defendant's accepted payment methods.

83. The transaction was completed through Defendant's Website, which facilitated payment processing and order confirmation in the ordinary course of its commercial operations.

84. The product purchased by Plaintiff was received on May 4, 2026. Representative images of the counterfeit product received by Plaintiff are attached hereto as Exhibit B.

85. On information and belief, the product purchased by Plaintiff was shipped from outside the United States, further evidencing Defendant's importation of counterfeit goods into U.S. commerce.

86. Upon inspection, the product was determined to be a counterfeit good that was not manufactured, authorized, licensed, or approved by Plaintiff.

87. The product bore Plaintiff's branding and/or design elements associated with the ALD x Porsche Collection, despite not originating from Plaintiff or any authorized source.

88. Defendant's placement of Plaintiff's marks replicates the branding placement and overall commercial impression of authentic ALD x Porsche products in a manner designed to deceive consumers.

89. Upon inspection, the product contained multiple objective indicia of counterfeiting that are inconsistent with genuine ALD x Porsche Collection products, including:

a) non-authentic branding and labeling, including the presence of tags and interior labels bearing the name "Running Cheetahs" rather than Plaintiff's ALD Marks, which is inconsistent with any genuine ALD product;

b) packaging inconsistent with Plaintiff's premium branding and distribution practices, including shipment in a generic plastic mailer labeled "JACKETS 4 RACING," rather than branded packaging associated with Plaintiff's products;

c) inferior materials, including the use of synthetic or low-grade materials inconsistent with the high-quality leather used in authentic ALD x Porsche products;

d) poor construction and finishing, including visible wrinkling, uneven paneling, and stitching inconsistencies not present in genuine products;

e) inaccurate and substandard embroidery and branding elements, including improperly executed "Porsche" lettering and crest patches that differ in quality, detail, and presentation from authentic ALD x Porsche products;

f) the absence of distinctive perforated leather paneling on the shoulders and arms, which is a defining design feature of authentic ALD x Porsche jackets and is entirely missing from Defendant's product;

g) generic and inconsistent care labeling, including labels indicating "100% polyester" construction and "Made in China," which are inconsistent with the materials and manufacturing standards of Plaintiff's authentic products; and

h) overall design and presentation that deviates materially from the cohesive, high-end design language of Plaintiff's official ALD x Porsche Collection.

90. These discrepancies confirm that the product is not a genuine ALD product and was not manufactured, authorized, or distributed by Plaintiff or any authorized partner.

91. Defendant's use of Plaintiff's marks in multiple prominent locations on the garment including "AIMÉ LEON DORE" prominently displayed across the back, "ALD" displayed on the sleeve, and Plaintiff's design mark displayed on the front, further demonstrates an intent to trade on Plaintiff's goodwill and to create the false impression that the product is an authentic ALD collaboration item in a manner intended to replicate the branding placement and overall commercial impression of authentic ALD x Porsche products.

92. The presence of entirely different branding, including "Running Cheetahs," further demonstrates that Defendant is not reselling genuine goods but is instead distributing counterfeit products falsely associated with Plaintiff.

93. The price at which Defendant offered the product was significantly lower than the price of authentic products within the ALD x Porsche Collection, further evidencing that the goods are not genuine.

94. Defendant's sale of products falsely branded as ALD collaboration goods at materially lower price points is intended to attract consumers seeking authentic ALD products and to exploit Plaintiff's goodwill.

95. The pricing disparity reinforces that Defendant's products are not genuine and is indicative of counterfeit goods designed to capitalize on consumer demand for Plaintiff's authentic products.

96. Defendant's conduct is likely to cause confusion, mistake, and deception among consumers, including as to the source, sponsorship, affiliation, or approval of Defendant's products by Plaintiff.

97. Prior to initiating this action, Plaintiff provided Defendant with actual notice of its infringing conduct. On or about February 9, 2026, Plaintiff, through counsel, transmitted a cease-and-desist letter identifying Defendant's unauthorized use of the ALD Marks and demanding that Defendant immediately cease and desist from its infringing activities.

98. The cease-and-desist letter specifically identified Defendant's sale of apparel falsely marketed as "Porsche x Aimé Leon Dore" products and informed Defendant that such products were unauthorized and constituted trademark counterfeiting.

99. Despite receiving actual notice of its unlawful conduct, Defendant failed and refused to comply with Plaintiff's demands and continued to advertise, offer for sale, and sell the Infringing Products through its Website.

100. Defendant's continued sale of infringing products after receipt of Plaintiff's cease-and-desist letter, combined with its modification of listings to obscure detection while continuing to sell counterfeit goods, constitutes willful infringement and deliberate counterfeiting.

101. In addition to the cease-and-desist letter, Plaintiff submitted a trademark infringement notice through Defendant's e-commerce platform provider, Shopify, seeking removal of the Infringing Products.

102. In response, Defendant submitted a written statement to Shopify asserting that the products offered for sale were "authentic goods" lawfully acquired from a "verified and legitimate supplier," and that its conduct constituted lawful resale under the first sale doctrine. A true and correct copy of Defendant's Shopify response is attached as Exhibit A.

103. Defendant's statements were false and misleading. As confirmed by Plaintiff's test purchase and inspection, the products sold by Defendant are counterfeit and are not genuine ALD products.

104. Defendant's reliance on the first sale doctrine is knowingly improper and pretextual, as that doctrine does not apply to counterfeit goods, and Defendant's assertion of that defense evidences its awareness of Plaintiff's rights and its deliberate attempt to evade enforcement.

105. Following Plaintiff's enforcement efforts, Defendant did not remove the Infringing Products from its Website, but instead modified certain product listings by removing or altering references to "Aimé Leon Dore" while continuing to sell the same products bearing Plaintiff's branding and logos.

106. On information and belief, Defendant's modification of product listings was undertaken to conceal its infringing conduct and avoid detection, while continuing to profit from the sale of counterfeit goods.

107. Despite these changes, the underlying products remained materially identical, including the placement of Plaintiff's branding on the goods themselves, confirming that Defendant did not cease its infringing conduct but instead attempted to disguise it.

108. Defendant has further attempted to conceal its identity and evade accountability by providing false or unverifiable identifying information, including identifying itself as "Sergio Admin," and listing a business address at 2105 Vista Oeste St NW Suite E 1399, Albuquerque, New Mexico, which, on information and belief, does not correspond to a legitimate business associated with Defendant.

109. Defendant's unauthorized use of the ALD Marks in connection with the manufacture, marketing, and sale of counterfeit goods is likely to cause, and has caused, confusion, mistake, and deception among consumers as to the source, origin, sponsorship, or approval of Defendant's products.

110. Defendant's use of the ALD Marks, including in connection with products referencing the ALD x Porsche Collection, falsely suggests that Defendant's products are genuine ALD goods or are affiliated with, endorsed by, or authorized by Plaintiff.

111. Because Plaintiff has in fact released authentic ALD x Porsche collaboration products, Defendant's use of identical or substantially similar naming conventions and branding significantly increases the likelihood of consumer confusion.

112. Consumers encountering Defendant's products are likely to believe that such products originate from Plaintiff or are part of Plaintiff's official collaboration with Porsche, when in fact they are counterfeit and unauthorized.

113. Defendant's conduct is likely to cause initial interest confusion, point-of-sale confusion, and post-sale confusion, including confusion among observers who may encounter Defendant's products after purchase and believe them to be genuine ALD products.

114. Defendant's sale of counterfeit goods bearing Plaintiff's marks deprives Plaintiff of the ability to control the quality and reputation of products associated with its brand, thereby harming Plaintiff's goodwill.

115. The inferior quality of Defendant's counterfeit products is likely to damage Plaintiff's reputation and diminish the value of the ALD Marks in the marketplace.

116. Defendant's conduct also interferes with Plaintiff's relationships with its customers, collaborators, and authorized partners by introducing unauthorized and counterfeit goods into the marketplace.

117. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, substantial harm, including damage to its brand, reputation, and goodwill, as well as lost sales and diminished control over its intellectual property.

118. Defendant's unlawful conduct will continue to cause irreparable harm to Plaintiff unless and until Defendant is enjoined by this Court from further infringement and counterfeiting.

**COUNT I**
**Trademark Infringement**
**(15 U.S.C. § 1114)**
(Against All Defendants)

119. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 118 as if fully set forth herein.

120. Plaintiff is the owner of valid, subsisting, and enforceable trademark rights in the ALD Marks, including, by way of example, United States Trademark Registration No. 5,811,889 for the mark AIMÉ LEON DORE.

121. The ALD Marks are distinctive and serve to identify Plaintiff as the source of high-quality apparel and related goods.

122. Defendants have used, reproduced, copied, and imitated the ALD Marks in commerce in connection with the manufacture, advertisement, promotion, offering for sale, and sale of goods without Plaintiff's authorization.

123. Defendants' use of the ALD Marks includes use in product titles, product descriptions, and on the goods themselves, including on jackets bearing Plaintiff's branding and logos.

124. Defendants' use of the ALD Marks is likely to cause confusion, mistake, or deception among consumers as to the source, origin, sponsorship, or approval of Defendants' goods.

125. Defendants' conduct is likely to cause consumers to believe, erroneously, that Defendants' products are genuine ALD products or are affiliated with, endorsed by, or authorized by Plaintiff.

126. Defendants' acts of trademark infringement have been willful, intentional, and undertaken in bad faith, as evidenced by, among other things, their continued sale of infringing products after receiving notice and their attempts to conceal their identity and activities.

127. As a direct and proximate result of Defendants' acts, Plaintiff has suffered, and will continue to suffer, damage to its brand, reputation, and goodwill.

128. Unless enjoined by this Court, Defendants will continue to use the ALD Marks and cause irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

## COUNT II
### Contributory Trademark Infringement
(Against All Defendants)

129. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 128 as if fully set forth herein.

130. On information and belief, Defendants, including the Doe Defendants, have knowingly provided services, goods, and/or infrastructure essential to the manufacture, marketing, distribution, and sale of the Infringing Products.

131. Such services include, without limitation, manufacturing or sourcing the goods, operating or controlling the Website, processing payments, fulfilling orders, and facilitating shipment of the Infringing Products.

132. Defendants knew or had reason to know that the products being manufactured, marketed, and sold bore unauthorized reproductions of Plaintiff's marks.

133. Defendants intentionally induced, encouraged, and/or materially contributed to the direct infringement of Plaintiff's marks by enabling the continued sale and distribution of infringing goods.

134.    Defendants' conduct constitutes contributory trademark infringement.

135.    Defendants' acts have been willful, intentional, and undertaken in bad faith.

136.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damage to its goodwill and reputation.

137.    Unless enjoined by this Court, Defendants will continue to contribute to the infringement of Plaintiff's marks.

138.    Plaintiff is entitled to injunctive relief and damages as a result of Defendants' conduct.

### COUNT III
### Trademark Counterfeiting
### (15 U.S.C. § 1114)

(Against All Defendants)

139.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 138 as if fully set forth herein.

140.    Plaintiff's ALD Marks are registered with the United States Patent and Trademark Office and are in full force and effect.

141.    Defendants have used spurious marks that are identical with, or substantially indistinguishable from, Plaintiff's registered marks in connection with the sale, offering for sale, and distribution of goods.

142.    The Infringing Products are not genuine and are not authorized by Plaintiff, and therefore constitute counterfeit goods.

143.    Defendants have used Plaintiff's marks directly on the goods themselves, including on the exterior of the jackets, as well as in product listings and marketing materials.

144.    Defendants' use of counterfeit marks is likely to cause confusion, mistake, or deception among consumers.

145. Defendants have engaged in the knowing and intentional trafficking of counterfeit goods bearing Plaintiff's marks.

146. Defendants' counterfeiting activities have been willful, as evidenced by their continued conduct after receiving notice and their efforts to evade detection.

147. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm, including damage to its brand and goodwill.

148. Plaintiff is entitled to statutory damages, enhanced damages, injunctive relief, and other remedies under 15 U.S.C. §§ 1116 and 1117.

## COUNT IV
### Contributory Trademark Counterfeiting
(Against All Defendants)

149. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 148 as if fully set forth herein.

150. On information and belief, Defendants, including the Doe Defendants, knowingly supplied goods, services, or infrastructure essential to the trafficking of counterfeit goods.

151. Defendants knew or were willfully blind to the fact that the goods being manufactured, marketed, and sold bore counterfeit versions of Plaintiff's marks.

152. Defendants, including Doe Defendants, intentionally induced and/or continued to supply services with knowledge of the infringing conduct.

153. Defendants provided services and support that enabled the sale and distribution of counterfeit goods, including manufacturing, sourcing, website operation, payment processing, and fulfillment.

154. Defendants' conduct constitutes contributory trademark counterfeiting under the Lanham Act.

155. Defendants' actions were intentional, willful, and undertaken in bad faith.

156. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial harm.

157. Defendants' conduct entitles Plaintiff to enhanced statutory damages and other remedies.

## COUNT V
### False Designation of Origin and Unfair Competition
### (15 U.S.C. § 1125(a))
(Against All Defendants)

158. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 157 as if fully set forth herein.

159. Defendants have used in commerce words, names, symbols, and devices, including Plaintiff's marks, in connection with the sale and promotion of goods.

160. Defendants' conduct is likely to cause confusion as to the affiliation, connection, or association of Defendants with Plaintiff.

161. Defendants have falsely represented that their products are genuine ALD products or are affiliated with Plaintiff.

162. Defendants' use of Plaintiff's marks in connection with counterfeit goods constitutes false designation of origin and unfair competition.

163. Defendants' conduct is willful and undertaken in bad faith.

164. Plaintiff has suffered damage to its reputation and goodwill as a result of Defendants' actions.

165. Plaintiff has no adequate remedy at law and is entitled to injunctive relief.

## COUNT VI
### Common Law Trademark Infringement
(Against All Defendants)

166. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 165 as if fully set forth herein.

167. Plaintiff owns common law trademark rights in the ALD Marks.

168. Defendants' unauthorized use of Plaintiff's marks is likely to cause confusion among consumers.

169. Defendants' conduct constitutes common law trademark infringement.

170. Defendants acted willfully and in bad faith.

171. Plaintiff has suffered damages as a result of Defendants' conduct.

## COUNT VII
## Common Law Unfair Competition
(Against All Defendants)

172. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 171 as if fully set forth herein.

173. Defendants have engaged in unfair competition by misappropriating Plaintiff's goodwill and passing off their goods as those of Plaintiff.

174. Defendants' conduct is likely to cause confusion and deception among consumers.

175. Defendants have intentionally exploited Plaintiff's reputation for commercial gain.

176. Defendants' conduct has caused and will continue to cause harm to Plaintiff.

177. Plaintiff is entitled to damages and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A. That Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, be preliminarily and permanently enjoined from

manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, or selling any goods bearing the ALD Marks or any reproduction, counterfeit, copy, or colorable imitation thereof;

B.  That Defendants be preliminarily and permanently enjoined from using Plaintiff's marks, or any confusingly similar marks, in connection with the sale, offering for sale, distribution, or advertising of any goods or services;

C.  That Defendants be preliminarily and permanently enjoined from falsely representing that Defendants or their products are affiliated with, sponsored by, or approved by Plaintiff;

D.  That Defendants be preliminarily and permanently enjoined from engaging in any conduct that is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Defendants' goods;

E.  That Defendants be preliminarily and permanently enjoined from further infringing, diluting, or otherwise violating Plaintiff's intellectual property rights;

F.  That the Court enter an order restraining Defendants, and all financial institutions, payment processors, merchant account providers, PayPal, credit card companies, banks, and any other entities in possession or control of Defendants' assets, from transferring, disposing of, or secreting any funds or assets derived from Defendants' infringing activities, pending final disposition of this action;

G. That Defendants and any third-party service providers, including but not limited to Shopify, payment processors, banks, and shipping providers, be ordered to identify all accounts, financial institutions, and payment channels used by Defendants, and to provide records sufficient to identify the full scope of Defendants' sales, revenues, suppliers, manufacturers, and distribution channels;

H. That Defendants and any third-party service providers be ordered to produce documents and data relating to the manufacture, marketing, sale, and shipment of the Infringing Products;

I. That Defendants, as well as any domain name registrars, domain name registries, website hosting providers, internet service providers, e-commerce platforms, marketplace operators, and any other third-party service providers facilitating the operation of Defendants' websites or online storefronts, be ordered to cease providing services to Defendants in connection with the sale, marketing, advertising, distribution, or offering for sale of the Infringing Products, including by disabling, suspending, or taking down any domain names, websites, webpages, online stores, or listings used to market or sell the Infringing Products;

J. That the Court authorize expedited discovery to allow Plaintiff to identify the true names, identities, and locations of Defendants, including JOHN DOES 1–10, as well as Defendants' suppliers, manufacturers, co-conspirators, and financial accounts;

K. That Defendants be ordered to deliver up for impoundment and destruction all counterfeit and infringing products, labels, packaging, tags, and advertising materials bearing the ALD Marks, as well as all molds, templates, and materials used to manufacture the Infringing Products, pursuant to 15 U.S.C. § 1118;

L. That Plaintiff be awarded all profits earned by Defendants from their unlawful conduct, together with all damages sustained by Plaintiff as a result of Defendants' acts;

M. That Plaintiff be awarded statutory damages for counterfeiting pursuant to 15 U.S.C. § 1117(c);

N. That the Court find Defendants' conduct to be willful and award enhanced statutory damages and treble damages as permitted by law;

O. That this case be declared exceptional under 15 U.S.C. § 1117(a), and that Plaintiff be awarded its reasonable attorneys' fees and costs;

a. That Plaintiff be awarded pre-judgment and post-judgment interest as permitted by law;

P. That the Court find that Plaintiff has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law; and

Q. That Plaintiff be awarded such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action on all issues so triable as of right.

Respectfully submitted,

Date: May 19, 2026

**JAYARAM PLLC**

**/s/ Vivek Jayaram**
Vivek Jayaram
Vivek@jayaramlaw.com
Palak Patel
Palak@Jayaramlaw.com

JAYARAM PLLC
54 W 21st Street, Suite 801
New York, NY 10010
Telephone: (516) 441-0961

# Exhibit A



**Date:** February 12, 2026

**Trademark Response | jackets4racing.com**

**1. Shopify Merchant Contact Information**

First Name:

Sergio

Last Name:

Admin

Phone:

15056281883

Email:

jackets4racing@gmail.com

Address:

2105 Vista Oeste St Nw Suite E 1399, Albuquerque

City:

Albuquerque, New Mexico

ZIP/Postal Code::

87120

Country:

US

State/Province:

AL

**2. Material(s) for Trademark**

Report ID:

6886efe4-0d34-49be-b77a-1b4e8ae24dba

Trademark(s):

AIMÉ LEON DORE

Response:

I respectfully submit that my use of the trademark "AIMÉ LEON DORE" does not constitute trademark infringement.

The products identified in the notice are authentic goods that were lawfully acquired from a verified and legitimate supplier of branded merchandise. The use of the mark "AIMÉ LEON DORE" on my website is solely for the purpose of accurately identifying the genuine branded products being offered for resale.

Under the first sale doctrine recognized under United States trademark law, the resale of genuine trademarked goods that were lawfully purchased does not constitute trademark infringement, provided that the goods are authentic and not materially altered. The products listed on my store are offered in their original branded form and are not modified, relabeled, or misrepresented.

The trademark is used in a purely descriptive manner to identify the brand of the goods, and not in any way that suggests affiliation, sponsorship, partnership, or endorsement by AIMÉ LEON DORE HOLDINGS LLC. My store does not claim to be an official retailer or authorized distributor of the brand, and no statements of authorization are made.

Accordingly, the removal appears to result from a misidentification of lawful resale activity rather than infringement.

I confirm that I have a good faith belief that the affected content was removed as a result of mistake or misidentification, and that the products offered are genuine goods acquired through legitimate commercial channels.

## 3. Declarations
- I consent to the jurisdiction of the Federal District Court for the judicial district in

which my address listed above is located or, if my address listed above is located outside of the United States, I consent to the jurisdiction of the Federal District Court for the District of Delaware.

• I will accept service of process from the party who submitted the trademark or trade dress infringement notice referred to above or its agent.

• I swear, under penalty of perjury, that I have a good faith belief that the affected content was removed as a result of a mistake or misidentification of the content to be removed.

## 4. Electronic Signature

Sergio Admin

# Exhibit B















